IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:21-cv-122

| | |
|---|---|
| ANDREA HINMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| 84 LUMBER COMPANY, | ) |
| | ) |
| Defendant. | ) |

NOW COMES Plaintiff, Andrea Hinman, by and through the undersigned counsel of record, complaining of Defendant, 84 Lumber Company, alleges and says unto this Court:

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination on the basis of sex and retaliation, and the Age Discrimination in Employment Act of 1967, which prohibits discrimination against anyone at least 40 years of age or older. Plaintiff, Andrea Hinman, (hereinafter "Plaintiff"), brings this action to remedy discriminatory employment practices of her employer, 84 Lumber Company (hereinafter "Defendant" or "84 Lumber"). Plaintiff alleges that Defendant took adverse action against Plaintiff's employment based on her age, sex, and in retaliation for protected activities. This Complaint sets out in detail the relevant instances of unlawful discrimination perpetrated by Defendant.

## PARTIES

1. Plaintiff is a United States Citizen and was employed by Defendant as an Office Manager at 84 Lumber located at 200 Emmett Road, Dunn, North Carolina 28334.

- 1 -

2. At all times relevant herein, Plaintiff is a citizen and resident of North Carolina.

3. At all times relevant herein, Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

4. At all times relevant herein, Defendant was an employer of Plaintiff within the meaning of 42 U.S.C. § 12111(5).

5. Defendant is an American operated building materials supply company incorporated in Pennsylvania with approximately 250 stores in 30 states throughout the country, including at least 11 stores located in North Carolina.

6. Defendant is subject to the personal jurisdiction of this court as they purposely availed themselves of conducting activities within the State of North Carolina. Defendant regularly conducts business and employs citizens of the State from their Dunn, North Carolina location and thereby meet the minimum contacts standard set forth in *International Shoe Co. v. Washington. See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 744 (1984); 326 U.S. 310, 315 (1945)).

## STATEMENT OF FACTS

7. At all relevant times, Plaintiff is a 55-year-old (DOB: 11/20/1965) female previously employed at Defendant's Dunn, North Carolina location, and currently employed at Defendant's Fayetteville, North Carolina location.

8. Plaintiff was initially hired to work for Defendant on February 10, 2016.

9. In approximately February 2018, Plaintiff was let go from her initial employment with Defendant.

10. In approximately November 2018, Defendant requested Plaintiff return to work for Defendant as an Office Manager, to fix issues which had arisen at the Dunn location. Plaintiff's job duties were described by Carl Allison, Area Manager, and Greg Presley, incoming General Manager,

in this meeting as being the "eyes and ears" of upper management and helping resolve issues at the Plant, such as with overtime and productivity.

11. Plaintiff agreed to return to Defendant's employer under the agreement that Defendant could not be fired at the plant level and could only be terminated at the corporate level, and would remain in her position for five years with a salary increase of 10% each year. This agreement was witnessed by Carl Allison, Area Manager, LiMary Laney, Human Resources and Recruiter, and Greg Presley, incoming General Manager.

12. Upon return, Plaintiff's supervisors were Jason Kindle, General Manager, and Sergio Romero De La Garza, Plant Manager.

13. On numerous occasions during 2018-2020, Plaintiff brought up safety concerns on the job, including but not limited to:

    a. On several occasions throughout 2018-2020, Plaintiff brought to the attention of management that individuals were inaccurately recording their time, conducting personal business on company time, or failing to clock in/out.

    b. On or about May 15, 2019, Plaintiff brought up concerns about an individual, Jose Navarret Garcia, sleeping on the job. Plaintiff was later informed that the Garcia was hungover.

    c. On or about December 5, 2019, Plaintiff discovered that employees had been fighting on the plant grounds and Production Manager, Amanda Decker, had not reported it.

    d. On several occasions, including but not limited to November 2019 and May 2020, Plaintiff brought up concerns about Amanda Decker sleeping on the job.

    e. On several occasions, including but not limited to in May 2019, June 2020, July 2020, and August 2020, Plaintiff complained of safety violations relating to the use of forklifts in the plant.

- f. On several occasions, including but not limited to January 2019, September 2019 and October 2019, Plaintiff brought up concerns about individuals wearing improper footwear and attire in the plant.

14. In response to her complaints regarding safety violations, Jason Kindle threatened to terminate Plaintiff's employment on several occasions and drastically cut her job duties.

15. Due to negative responses from management, Plaintiff, on many occasions, would have the male design manager, Rodney Evans, bring forth safety concerns as he received a much more positive response from management as compared to Plaintiff.

16. Sergio Romero De La Garza, on more than one occasion, stated his dislike of working with women while in front of Plaintiff and coworkers.

17. On or about December 19, 2019, both Jason Kindle and Sergio Romero De La Garza were not present at work when an allegation arose that Plaintiff was intoxicated or hungover on the job.

18. Plaintiff has never showed up to work intoxicated or hungover. Alternatively, on December 19, 2019, Plaintiff was experiencing a severe headache throughout the workday, and provided this information when her supervisors returned to work.

19. On January 21, 2020, Plaintiff received corrective action arising from accusations that Plaintiff was threatening to retaliate against the individuals who reported her on December 19, 2019 and was told to "conduct [her]self professionally at all times." In the employee comment section of this corrective action form, Plaintiff stated that she "did not retaliate against anyone" and believe she was "being singled out for standing up [for] reporting things in [the] past." See attached Exhibit 1 – Corrective Action Form.

20. On many occasions under the supervision of Kindle and Romero De La Garza, Plaintiff was accused of being unprofessional.

21. In approximately July 2020, Amanda Decker, approximately 20 years younger than Plaintiff,

- 4 -

Case 5:21-cv-00122-M   Document 1   Filed 03/12/21   Page 4 of 11

was promoted from Customer Service Representative (CSR) to Production Manager, a position equivalent to that of Plaintiff. Decker consistently was unprofessional prior to her promotion while she was a CSR, a position that should have been under the supervision of Plaintiff. However, while Decker was in this position, management had informed Plaintiff that she was not allowed to instruct Ms. Decker on anything within the CSR position and Ms. Decker was not allowed to help Plaintiff with anything. Following her promotion in July 2020, Ms. Decker has continued to be unprofessional following her promotion, although presently being in a management position which would be setting an example for the plant.

22. On September 17, 2020, Kindle informed Plaintiff that her services were no longer needed as they were "going a different direction" and that her last day would be September 25, 2020. Kindle asked Plaintiff if she intended to finish out her time at the Dunn location, and stated that she could let him know her decision later.

23. On or about September 17, 2020, Plaintiff called the Vice President of the company who indicated that she should finish out her time at the Dunn location in hopes that a position would open at the Fayetteville location which would allow her to transfer.

24. On or about the evening of September 17, 2020, Plaintiff texted Kindle to inform him that she intended to finish out her time at the Dunn location.

25. On September 18, 2020, Plaintiff was approached by Kindle and Romero De La Garzo, who informed the Plaintiff that "she was making them uncomfortable" and that she could either end her employment that day, take a week vacation until the Fayetteville location could determine if there was a position that Plaintiff could fill or that Kindle would fire her that day which would make her ineligible for transfer to the Fayetteville location. Kindle insisted that Plaintiff give him an immediate answer, however, Rodney Evans, Design Manager intervened to allow Plaintiff some additional time to make a decision.

26. During lunch on September 18, 2020, Plaintiff emailed Kindle to clarify that if she took vacation then she would not be terminated, however, Kindle refused to answer her question as he was "no longer allowed to speak to her."

27. Following September 18, 2020, to maintain employment, Plaintiff was transferred to Defendant's Fayetteville location at a $20,000 pay cut a year and required to work 48 hours a week as opposed to 40-45 hours. This position was also a demotion as it is not a management job.

28. Plaintiff's position was not eliminated at the Dunn location, and was later filled by Julie Blacazar, who is in a relationship with the Sales Manager at the Dunn location, Del Oldland.

29. On December 14, 2020, Plaintiff was issued a Right to Sue letter by the Equal Employment Opportunity Commission. See attached Exhibit 2 – Hinman Right to Sue.

**FIRST CAUSE OF ACTION**
(Age Discrimination)

30. The allegations set forth in paragraphs 1 through 28 are realleged and incorporated by reference as if fully set forth herein.

31. "In order to make a *prima facie* case under the [Age Discrimination in Employment Act of 1967] ADEA, the Plaintiff must show that [s]he (1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting [her] employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably than someone outside the protected class or someone 'substantially younger." *Sullivan v. Perdue Farms, Inc.* 133 F. Supp. 3d 828, 837 (2015)(citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).

32. Plaintiff was in the age group protected by the ADEA as she was over the age of 40 at the time the discrimination took place.

33. Defendant took adverse employment action against Plaintiff as they issued a corrective action

in January 2020 and transferred her to a location farther from her home, demoted her, and reduced her pay by approximately $20,000 a year.

34. Plaintiff was meeting her employer's expectations at the time of the adverse action, as she was rated as above average to superior on her performance review just one month prior to her demotion. See attached Exhibit 2 - August 2020 Performance Appraisal.

35. Plaintiff was treated less favorably than Amanda Decker who upon information and belief is in her 20s, and in a management role similar to Plaintiff. Plaintiff was accused of being unprofessional by management on several occasions, while Decker was regularly conducting herself unprofessionally. Decker would often be found sleeping at her desk, playing on her phone, wearing inappropriate and unprofessional clothing, using her office as a social gathering spot, and would slow down production. However, while Plaintiff was disciplined and ridiculed for unprofessional behavior, Decker was promoted in July 2020.

## **SECOND CAUSE OF ACTION**
(Sex Discrimination)

36. The allegation set forth in paragraphs one through thirty-four are realleged and incorporated by reference as if fully set forth herein.

37. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of . . . sex . . . ." 42 U.S.C. § 2000e-(2)(a)(1).

38. To establish a *prima facie* case of sex discrimination, Plaintiff must show that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) was replaced by or treated less favorably than someone outside her protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

39. Plaintiff is a member of a protected class as she is female.

40. Plaintiff suffered adverse employment action as she was ridiculed, had her job duties cut, received a disciplinary action in January 2020, and was demoted and transferred in September 2020.

41. Plaintiff was meeting her employer's expectations at the time of the adverse action, as she was rated as above average to superior on her performance reviews.

42. Plaintiff was treated less favorably than Rodney Evans, Design Manager, as Plaintiff's employment was threatened when she brought forward safety concerns, and Plaintiff was advised by Romero De La Garza that he "disliked working with women". However, when Evans would approach management about the same concerns, the concerns were addressed and/or disregarded without threat to Evan's employment. In addition, Plaintiff was provided an ultimatum by management and only afforded time to think on the matter when a male, Rodney Evans, intervened.

## **THIRD CAUSE OF ACTION**
(Retaliation)

43. The allegations set forth in paragraph 1 through 41 are realleged and incorporated by reference as if fully set forth herein.

44. "To establish a *prima facie* claim of retaliation, a plaintiff must show: (1) that [s]he engaged in protected activity, (2) that the employer took a materially adverse action against [her] and (3) there is a causal connection between the protected activity and the adverse action." *Perkins v. International Paper Company,* 936 F.3d 196, 213 (4th Cir. 2019).

45. To prove that she engaged in protected activity under Title VII, a plaintiff "must only show that [s]he reasonably believed that the complained of conduct was unlawful." *Nathan v. Takeda Pharmaceuticals America, Inc.,* 890 F. Supp. 2d 629, 644 (2012)(citing *E.E.O.C. v. Navy Federal Credit Union,* 424 F.3d 397, 406 (2005)(explaining that Title VII "protected activity"

applies to complaints "in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful.")).

46. Plaintiff engaged in protected activity when she complained to management regarding safety violations which she believed to be unlawful conduct within the plant on several occasions throughout 2018-2020. In addition, Plaintiff identified by comment in the January 2020 action plan that she believed she was being singled out because of her reports of safety violations.

47. Defendant took materially adverse action against Plaintiff by continuously threatening her employment, reducing her job duties, giving Plaintiff a disciplinary action in January 2020, and ultimately transferring and demoting Plaintiff in September 2020.

48. There is a causal connection between the protected activity and the adverse action as the adverse actions, such as threats to Plaintiff's employment and reduction in job duties occurred directly following Plaintiff's complaints. In addition, as a result of Plaintiff's complaints of individuals sleeping and being hungover on the job in in May 2019, Plaintiff was accused of the same conduct in January 2020. After complaining of safety violations for approximately two years, most recently in the beginning of September 2020, Plaintiff was informed the company was "going another direction" and then transferred to a less convenient store and demoted.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court:

A. Order Defendant to make Plaintiff whole by providing appropriate monetary relief in the amount of $100,000;

B. Order Defendant to expunge Plaintiff's employment record as necessary to eradicate the effects of Defendant's discriminatory practices;

C. Order Defendant to make Plaintiff whole by providing compensation for pecuniary losses resulting from the unlawful employment practices described herein;

D. Grant such relief as the Court deems necessary and proper in the public interest; and

E. Award Plaintiff her attorney's fees and costs of this action pursuant to Title VII of the Civil Rights Act of 1964.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of facts raised by this Complaint.

Respectfully submitted this, the 12th day of March, 2021.

        MCLAWHORN & RUSSELL PLLC

        /s/Benjamin T. McLawhorn
        Benjamin T. McLawhorn
        N.C. State Bar No. 53821
        Ben@mclawfirmnc.com
        McLawhorn & Russell, PLLC
        8801 Fast Park Drive, Suite 307
        Raleigh, NC 27617
        Telephone: (919) 364-8975
        Facsimile: (919) 646-4032
        *Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

      This is to certify that the undersigned has this date served the foregoing in the above-entitled action upon all other parties to this cause by depositing a copy hereof, postage paid, in the United States mail, addressed to said parties as follows:

Registered Agent: Corporate Creation Network Inc.
4121 Washington Road
McMurray, PA 14317

This the 12th day of March, 2021.

                        /s/Benjamin T. McLawhorn
                        Benjamin T. McLawhorn
                        N.C. State Bar No. 53821
                        Ben@mclawfirmnc.com
                        McLawhorn & Russell, PLLC
                        8801 Fast Park Drive, Suite 307
                        Raleigh, NC 27617
                        Telephone: (919) 364-8975
                        Facsimile: (919) 646-4032
                        *Attorney for Plaintiff*